# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INMEXTI, S. de R.L. de C.V., a limited liability company of Baja California, Republic of Mexico,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br>TACNA SERVICES, INC., a California corporation; and DOES 1 to 30,<br>　　　　　　　　　　Defendants. | Case No. 12cv1379 BTM(JMA)<br><br>**ORDER DENYING MOTION TO DISMISS** |

Defendant TACNA Services, Inc., ("TACNA" or "Defendant") has filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7). For the reasons discussed below, Defendant's motion is **DENIED**.

## I. BACKGROUND

This action arises out of a sublease of commercial property (the "Property") in Tijuana, Baja California, Mexico. The Property is held in a real-estate trust ("*fideicomiso*"), and there are two beneficiaries of the *fideicomiso* - Fibercon de Mexico, S.A. de C.V. ("Fibercon") (a Mexican stock company) and CJS Company, LLC ("CJS"). (Compl. ¶15.)

Plaintiff Inmexti, S. de R.L. de C.V. ("Inmexti") leases the Property from Fibercon. (Compl. ¶ 16.) In December 2010, Ross K. Baldwin, sole shareholder of TACNA and owner

of about half of the stock of Mam De La Frontera, S.A. de C.V. ("Mam"), met with representatives of Inmexti to negotiate a sublease of the Property for use by a client of TACNA and/or Mam, Lawrence Avila dba Avila Garden Art ("Avila"). (Compl. ¶ 17-19.) Oswaldo Diaz also participated in the negotiations on behalf of Mam and/or TACNA. (Comp. ¶ 19.) The representatives of Inmexti disclosed to Baldwin and Diaz that Inmexti was leasing the Property from only one of the two beneficiaries of the *fideicomiso* and that there were legal actions between the beneficiaries with respect to the Property. (Compl. ¶¶ 20-21.)

Baldwin and Diaz insisted on a "escape clause," which would allow for early termination of the sublease upon 90-days notice. (Compl. ¶ 22.) Inmexti agreed to an escape clause on the condition that in the event that the escape clause was invoked, Mam would pay liquidated damages in the amount of five-months rent. (Compl. ¶ 23.) Inmexti also insisted that the Property would not be subleased to Mam unless TACNA signed a guaranty with certain terms and conditions. (Compl. ¶ 24.)

On or about December 21, 2012, the following documents were signed contemporaneously: (1) an acknowledgement, signed by Baldwin and Diaz, that Inmexti had disclosed the existence of the *fideicomiso* legal actions (Compl. Ex. 1); (2) a sublease titled Contrato de Arrendamiento de Naturaleza Mercantil ("Sublease") between Inmexti as sublessor and Mam as sublessee (Def. Ex. A.); and (3) a Guaranty of Lease ("Guaranty") executed by TACNA, as guarantor, in favor of Inmexti. (Compl. Ex. 3.)

The sublease provides that the term of the contract is 18 months, beginning February 1, 2011, with an option to renew the lease for another 18 months. (Sublease, Art. 3.1.) The rent was set at $8,047.00 per month plus VAT. (Sublease, Art. 4.1.) The VAT in Tijuana at that time was 11%, making the amount of VAT due under the Sublease $885.17 per month. (Compl. ¶ 34.) As negotiated, the sublease contains an "escape clause," which allows for early termination upon 90-days notice but obligates Mam to pay a termination fee in the amount of five months of rent. (Sublease, Art. 19.1.) The sublease also provides that in addition to the early termination fee, Mam is obligated to pay Inmexti a fee in the amount of 99% of the monthly rent payment for every month in which Mam does not deliver to Inmexti

the possession of the Property at the end of the sublease. (Sublease, Art. 19.2.)

In the Guaranty, TACNA unconditionally guarantees the full, timely, and complete payment and performance of Mam's promises and obligations set forth in the Sublease. (Guaranty ¶ 2.1.) The Guaranty provides that the obligations of the Guarantor are "independent of the obligations of Sub-Lessee" and that the Guaranty shall not be affected if recovery against the Sub-Lessee based upon the Guaranteed Obligations becomes unenforceable for any reason. (Guaranty ¶ 2.2.) Under the Guaranty, the Guarantor waives all defenses and right which Guarantor might otherwise have to exoneration under the Guaranty. (Guaranty, ¶ 5.3.)

On or about August 9, 2011, Mam notified Inmexti that it was exercising the 90-day escape clause in the Sublease. (Compl. ¶ 62.) On or about November 17, 2011, Inmexti received a letter from Mam in which Mam explained that a company identified as "Avilas Garden Art S.A. de C.V." had taken possession of the Property on the alleged ground that Inmexti did not have possession of the Property. (Compl. ¶ 63.) The last month of rent paid by Mam was October 2011. (Compl. ¶ 68.) Mam has not delivered possession of the Property to Inmexti. (Compl. ¶ 69.) Inmexti has sent demand letters TACNA, but TACNA has refused to pay any part of the guaranteed obligations. (Compl. ¶¶ 65-67.)

On June 7, 2012, Inmexti commenced this suit. In its Complaint, Inmexti asserts a claim for breach of the Guaranty against TACNA.

## II. DISCUSSION

TACNA moves to dismiss the Complaint on the grounds that (1) Inmexti has failed to establish that diversity jurisdiction exists; (2) the Complaint fails to state a claim upon which relief may be granted: and (3) CJS, a necessary party to this litigation, has not been joined, and its joinder will destroy any diversity jurisdiction which exists. The Court does not find any of these grounds to be persuasive.

//

//

A.      Diversity Jurisdiction

In its Complaint, Inmexti alleges that diversity jurisdiction exists under 28 U.S.C. § 1332(a)(2), because the amount in controversy exceeds the sum of $75,000 and the suit is between a citizen of a State and a citizen of a foreign state.

TACNA argues that Inmexti is a limited liability company and that Inmexti must therefore allege the citizenship of each member. When determining the citizenship of a domestic LLC or LLP, the court looks to the citizenship of each member. See Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). Here, however, Inmexti is a foreign corporate entity. In Cohn v. Rosenfeld, 733 F.2d 625, 629 (1984), the Ninth Circuit explained that § 1332(a)(2) "applies to foreign legal entities of all kinds, so long as the entity is considered a juridical person under the law that created it." In Cohn, the Ninth Circuit concluded that an Liechtenstein *anstalt* is a juridicial person under Liechtenstein law and that, therefore, the *anstalt* was a "citizen or subject" of Liechtenstein, regardless of which common law entity *anstalts* most nearly resemble. Id. at 629.

Inmexti is a *sociedad de responsabilidad limitada de capital variable*. It appears that such an entity is formed under the laws of Mexico, has the ability to sue and be sued, and is recognized a juridical person under the laws of Mexico. See, e.g., Capitaliza-T Sociedad De Responsabilidad Limitada de Capital Variable v. Wachovia Bank of Delaware Nat'l Ass'n, 2011 WL 864421 (D. Del. March 9, 2011). Therefore, Inmexti is a citizen of Mexico.

Even if the citizenship of Inmexti depended on the citizenship of its members, Inmexti has submitted evidence that the members of Inmexti are citizens of Mexico. The only members of Inmexti are Marta E. Morales Juarez and Manuel Casillas. (Morales Decl. ¶ 5; Casillas Decl. ¶ 5.) Both Juarez and Casillas are domiciled in and citizens of Mexico and are not admitted for permanent residence in the United States. (Morales Decl. ¶¶ 1-3; Casillas Decl. ¶¶ 1-3.) Therefore, Inmexti has established that there is diversity of citizenship between Plaintiff, a foreign citizen, and TACNA, a California corporation.

TACNA also argues that Inmexti has failed to establish that the amount in contoversy exceeds $75,000. In its Complaint, Inmexti prays for at least $75,030 as compensatory

damages for unpaid rent and late charges for the eight months from November 2011 to June 2012, $44,660 corresponding to the escape clause termination fee, and attorney's fees and expenses as permitted by the Guaranty. (Compl. at 12.)

When an action is originally filed in federal court, the amount in controversy is generally determined from the face of the pleadings. Crum v. Circus Circus Ent., 231 F.3d 1129, 1131 (9th Cir. 2000). The sum claimed by the plaintiff controls so long as the claim is made in good faith, and dismissal is justified only if appears "to a legal certainty" that the claim is really for less than the jurisdictional amount. Id.

TACNA has not shown to a legal certainty that the amount in controversy is less than the jurisdictional amount. Under the escape clause, the amount of liquidated damages owed is $44,660.85 (5 x $8,932.17). In addition, the Sublease provides that the Mam is obligated to pay a fee in the amount of 99% of the monthly rent payment for every month in which Mam does not deliver to Inmexti possession of the Property. At the time this suit was filed, possession of the property had not been turned over to Inmexti. Thus, Inmexti is also arguably owed 99% of the monthly rent ($8,842.85) for eight months (November 2011-June 2012), totaling $70,742.80. Even if Inmexti could not recover both the termination fee and 99% of the rent for any given month, the total amount of payments owed by Mam would be $71,189.40 ((3 x $8,842.85) + $44,660.85). Under the Guaranty, the prevailing party is also entitled to attorney's fees. (Guaranty ¶ 15.) Thus, it appears that the amount-in-controversy requirement has been satisfied.

TACNA argues that Inmexti is not entitled to payments beyond November 2011 because Mam was dispossessed of the property. According to Mam, on November 4, 2011, Mexican officials served Mam with a Mexican labor court order and entered the Property with attorneys of CJS and Avilas. (Baldwin Decl. ¶ 10.) Mam was told that it was no longer entitled to possession of the Property, and was shown a lease between CJS and Avilas Garden Art S.A. de C.V. (Id.) On November 10, 2011, Mam informed Inmexti that it no longer had possession of the Property. (Baldwin Decl. ¶ 13.) However, even if Mam no longer had physical possession of the Property, it is unclear whether this circumstance

1  relieved Mam of its obligation to deliver possession.  Based on the record before the Court,
2  the Court cannot say whether Mam would be able to assert an impossibility defense under
3  the laws of the State of Baja California, which govern the Sublease.  Therefore, the Court
4  cannot conclude at this time that TACNA had no duty under the Guaranty to make payments
5  beyond November 2011 for Mam's failure to deliver possession of the Property to Inmexti.

6  TACNA also argues that the amount of payments that it allegedly owes Inmexti should
7  be reduced by $16,094, the amount of Mam's security deposit, which has not been returned.
8  However, "affirmative defenses, counterclaims, and potential offsets may not be invoked to
9  demonstrate the amount-in-controversy is actually less than the jurisdictional minimum."
10 Lara v. Trimac Trans. Serv., 2010 WL 3119366, at * 3 (C.D. Cal. Aug. 6, 2010).

11 TACNA has not shown to a legal certainty that the amount in controversy is really less
12 than the jurisdictional amount.  Therefore, the Court denies TACNA's 12(b)(1) motion.

13

14 B.    12(b)(6) Motion

15 TACNA contends that Inmexti has failed to state a claim upon which relief can be
16 granted because a Mexican court has issued an "*Amparo*," which TACNA claims is a final
17 judgment that determines that Inmexti never had any rights to the Property and therefore had
18 no right to enter into the Sublease with Mam.

19 The parties dispute the legal effect of the *Amparo*.  However, the Court need not
20 determine the legal consequences of the *Amparo* for purposes of this motion.  The Guaranty
21 is governed by California law.  (Guaranty ¶ 12.)  Under California law, "A contract of guaranty
22 gives rise to a separate and independent obligation from that which binds the principal
23 debtor."  Talbott v. Hustwit, 164 Cal. App. 4th 148, 151 (2008).  The Guaranty itself provides
24 that it is an unconditional guarantee and that the Guaranty is independent of the obligations
25 of the Sub-Lessee.  (Guaranty ¶¶ 2.1, 2.2.)  It also states that it shall not be affected if
26 recovery against the Sub-Lessee may become unenforceable or voidable.  (Guaranty, ¶ 2.2.)
27 Thus, even if the Sublease is rendered void by the *Amparo*, to the extent that the Guaranty
28

1 is an independent obligation that binds TACNA, Inmexti may still have a claim against
2 TACNA. Whether TACNA can raise any of Mam's defenses is better addressed in a motion
3 for summary judgment on a developed factual record.[1]

4 TACNA makes a passing claim that it was fraudulently induced into entering into the
5 Guaranty. However, this defense requires the consideration of evidence and should be
6 raised in a motion for summary judgment, not a motion to dismiss.

C. <u>Indispensable Party</u>

9 TACNA contends that (1) CJS is an indispensable party under Fed. R. Civ. P. 19(b);
10 (2) CJS cannot be joined because CJS's presence as a plaintiff would destroy diversity; and
11 (3) this action must therefore be dismissed under Fed. R. Civ. P. 12(b)(7).

12 The first inquiry the Court must make is whether CJS is a "person required to be
13 joined if feasible" under Fed. R. Civ. P. 19(a). A person is required to be joined if feasible
14 under Rule 19(a)(1)(A) if, "in that person's absence, the court cannot accord complete relief
15 among the existing parties" or under Rule 19(a)(1)(B) if "that person claims an interest
16 relating to the subject of the action and is so situated that disposing of the action in the
17 person's absence may: (i) as a practical matter impair or impede the person's ability to
18 protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring
19 double, multiple, or otherwise inconsistent obligations because of the interest."

20 TACNA contends that CJS is a person required to be joined if feasible under Rule
21 19(a)(1)(B) because CJS has made demands on Mam for payment of rent and other
22 amounts arising out of the Sublease, and if CJS does not participate in this litigation, TACNA
23 may be subject to multiple actions and double or inconsistent obligations. The Court does
24 not agree.

---

[1] At this juncture, the Court is not definitively ruling on the issue of whether TACNA's obligations under the Guaranty are separate and independent of the obligations of Mam under the sublease. If TACNA has any arguments, based on contractual interpretation or otherwise, that its obligations are not independent of Mam's obligations, TACNA may raise these arguments in a motion for summary judgment.

As already discussed, it appears that the Guaranty is independent of Mam's obligations under the Sublease. The only parties to the Guaranty are Inmexti and TACNA. To the extent the Guaranty is independent of Mam's obligations, any claims CJS may have with respect to payments owed to it by Mam do not have any impact on TACNA's obligations to Inmexti under the Guaranty.

Accordingly, at this time, the Court does not find CJS to be a party who is required to be joined if feasible, and CJS's absence does not require dismissal of this action.

### III.  CONCLUSION

For the reasons discussed above, TACNA's motion to dismiss is **DENIED**. TACNA shall file an answer within 20 days of the entry of this Order.

**IT IS SO ORDERED.**

DATED: September 6, 2012

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court